**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

ROBERT ALLEN BETTELLI,     )
        Petitioner,     )     **Civil Action No. 10-5 Erie**
                )
     v.             )
                )     **Magistrate Judge Susan Paradise Baxter**
PAUL K. SMEAL, et al.,     )
        Respondents.     )

**OPINION AND ORDER**[1]

Presently before the Court is the amended petition for a writ of habeas corpus filed by Robert Allen Bettelli. [ECF No. 14]. He is challenging the judgment of sentence imposed upon him by the Court of Common Pleas of Venango County in June of 2005. He raises two grounds for relief, which he has set forth more fully in his Memorandum of Law In Support of Amended Habeas Corpus. [ECF No. 15]. He claims that he was denied his Sixth Amendment right to assistance of counsel at his trial and that there was insufficient evidence to support the jury's verdicts of guilt.

For the reasons set forth below, Bettelli's amended petition is denied and a certificate of appealability is denied.

**I.**

**A.**    **Relevant Background**[2]

In his amended petition for a writ of habeas corpus, Bettelli is seeking federal habeas relief from a judgment of sentence imposed on June 14, 2005, by the Court of Common Pleas of Venango County

---

[1]     In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a U.S. Magistrate Judge conduct proceedings in this case, including entry of a final judgment.

[2]     Respondents have submitted the Common Pleas Court's and the appellate courts' records in Bettelli's case. Included in the Common Pleas Court's file are the transcripts of several proceedings, as well as audio recordings of the March 7, 2005, proceeding to appoint standby counsel and to select the jury; the March 17, 2005, trial; and, the June 14, 2005, sentencing. All citations herein to documents contained in the state court records are in parentheses.

following his convictions of rape, rape of a child, two counts of involuntary deviate sexual intercourse, aggravated indecent assault, and indecent assault.  Bettelli's convictions arose from his sexual abuse of his former girlfriend's minor daughter.

The criminal complaint was filed in Bettelli's case in February of 2004.  He hired private counsel, Michael Hadley, Esquire, to represent him.  Pending his trial, Bettelli was released on bond and he continued employment as an over-the-road truck driver.

Bettelli's trial was originally scheduled for August of 2004.  (See Public Defender's Office of Venango Cnty. v. Venango Cnty. Court of Common Pleas, No. 16 WM 2005, slip op. at 2 (CP Venango, Apr. 15, 2005) (White, J.)).  On August 20, 2004, Hadley filed a motion to withdraw as defense counsel. The Honorable H. William White conducted a hearing with Bettelli and Hadley both present.[3]

> Following the hearing, Judge White issued the following Order of Court:
>
> AND NOW, this 20th day of August, 2004, the Court has conducted a conference in open court with the Defendant and his counsel.  *The Court tried to work out a payment plan with the Defendant so that he would pay his counsel a sufficient amount to obligate counsel in this case; however, the Court was not able to get the Defendant to commit to any rational plan to pay his counsel what counsel clearly is entitled to represent him in this proceeding.*
>
> Therefore, counsel's Motion to Withdraw is granted.  The Clerk will note that Michael Hadley is discharged as counsel for the Defendant in this proceeding.  Defendant is now pro se.

(8/20/04 Order of Court (emphasis added)).  Bettelli's trial was continued to the October trial term.

Another conference was held on September 24, 2004, so that an on-the-record colloquy could be conducted regarding Bettelli's right to represent himself.  (9/24/04 Hr'g Tr. at 1).  At the time of the events in question, the Pennsylvania Rules of Criminal Procedure provided:

---

[3]      It does not appear that this hearing was transcribed because no transcription of it is contained in the state court record.  On August 26, 2004, Bettelli appeared *pro se* at another pre-trial conference.  It does not appear that this conference was transcribed either.  Judge White explained that at this conference Bettelli "was again exhorted to get counsel."  (Public Defender's Office of Venango Cnty., 16 WM 2005, slip op. at 2).

**Rule 121.  Waiver of Counsel**

**(A)  Generally.**  The defendant may waive the right to be represented by counsel.

- - -

**(C)  Proceedings Before a Judge.**  When the defendant seeks to waive the right to counsel after the preliminary hearing, the judge shall ascertain from the defendant, on the record, whether this is a knowing, voluntary, and intelligent waiver of counsel.

Pa.R.Crim.P. 121(C) (2001).[4]

The Honorable Oliver J. Lobaugh presided over the September 24th hearing, and he conducted the colloquy required by Pa.R.Crim.P. 121.  At the beginning of the hearing, he asked Bettelli if he wanted to proceed *pro se*:

| | |
|---|---|
| The Court: | [Do] [y]ou want to represent yourself? |
| Bettelli: | At the moment sir, yes.  I am still trying to save money up to get another attorney. |

---

[4]  The comment to this rule at the time read in part as follows:

In the state of the law existing at the time this rule was drafted, it is difficult to formulate a comprehensive list of questions which must be asked by the defendant in determining whether the defendant's tendered waiver of counsel is knowing, intelligent, and voluntary.  Court decisions contain broad language in referring to the areas and matters to be encompassed in determining whether the defendant understands the full impact and consequences of his waiver of the right to counsel, but is nevertheless willing to waive that right.  It is recommended, however, that at a minimum, the judge or issuing authority ask questions to elicit the following information:

(1)  That the defendant understands that he or she has the right to be represented by counsel, and the right to have free counsel appointed if the defendant is indigent.

(2)  That the defendant understands the nature of the charges against the defendant and the elements of each of those charges.

(3)  That the defendant is aware of the permissible range of sentences and/or fines for the offenses charged.

(4)  That the defendant understands that if he or she waives the right to counsel, the defendant will still be [b]ound by all the normal rules of procedure and that counsel would be familiar with these rules.

(5)  That the defendant understands that there are possible defenses to these charges which counsel might be aware of, and if these defenses are not raised at trial, they may be lost permanently.

(6)  That the defendant understands that, in addition to defenses, the defendant has many rights that, if not timely asserted, may be lost permanently; and that if errors occur and are not timely objected to, or otherwise timely raised by the defendant, these errors may be lost permanently.

Pa.R.Crim.P. 121 cmt. (2001).  When Rule 121 was amended in 2007, this enumerated list of information to be elicited from the defendant was moved from the comment section of the rule into the text of the rule itself.  Pa.R.Crim.P. 121(A)(2)(a)-(f) (2007).

| | |
|---|---|
| The Court: | So you do want to hire an attorney eventually? |
| Bettelli: | Yes, sir.  But at the time if the process and everything here allows me to. |
| The Court: | This case is scheduled for trial in October? |
| [Prosecutor]: | At this point, Your Honor, we haven't done a call of the list yet, but we were planning on putting it on standby list for October.  It's my understanding that the defendant is going to be requesting a continuance to the November trial term. |

                                        - - -

| | |
|---|---|
| The Court: | Mr. Bettelli, raise your right hand, please.  Do you understand that you have an absolute right to be represented by an attorney in this case at all stages of the proceedings and that is by an attorney who is experienced in the handling of criminal cases? |
| Bettelli: | Yes, sir. |
| The Court: | Do you understand that if you fail to retain your own lawyer after you have been given ample opportunity to retain counsel that the Court will consider this a waiver on your part not to retain private legal counsel and an election by you to represent yourself? |
| Bettelli: | Yes. |
| The Court: | Do you understand that if you do not retain counsel to represent you you may be required to proceed to trial in this case without a lawyer and that you will have to represent yourself prior to, during, and after such trial? |
| Bettelli: | Yes…. |

(9/24/04 Hr'g Tr. at 2-4).

Judge Lobaugh next engaged in an extensive colloquy with Bettelli in which the charges against

him and the potential sentences he faced were explained, as were the consequences of proceeding *pro se*.

(Id. at 4-20).  Bettelli acknowledged that he could read, write, and understand the English language, had

never been in a mental institution, was not suffering from any physical or mental problem that would

affect his understanding of the proceedings, and had not taken any drugs or alcohol in the previous two

days.  Judge Lobaugh explained to him in detail the charges against him.  Bettelli acknowledged that he

understood.  Judge Lobaugh described the meaning of reasonable doubt and the possible sentences he

would face if convicted.  Bettelli indicated that he understood.  (Id. at 4-16).

At the conclusion of the colloquy, Judge Lobaugh asked Bettelli why he "basically fired

Mr. Hadley."  (Id. at 20):

| | |
|---|---|
| Bettelli: | … I tried to when I did go to the court last time to release him from being my attorney.  The judge looked at me and thought it was a joke that I would rather pay my payment on a truck than pay my attorney.  Well, I drive six hours to work round trip.  Without a vehicle, I have no job.  I can understand where he is coming from as well as the situation I am in. |
| The Court: | And I explained to you earlier that you are looking at 67 and a half to 135 years and fines up to $135,000.  I can understand why [Judge White] would question why you didn't want to have an attorney represent you. |
| Bettelli: | If I don't pay on my truck, I lose it and I lose my job and I can't afford an attorney.  I tried to work that out with Mr. Hadley. |
| The Court: | Like making payments? |
| Bettelli: | Yes.  And he didn't want that.  So I couldn't do anything else. |
| The Court: | So you do plan on talking to another attorney about – |
| Bettelli: | Yes.  When I come up with an amount of money I'll – yes, sir.  Right at the moment – when I come up with the amount of money he wants.  I figure $1500.  I need to come up with that and get an attorney and talk to him.  That's what I'm trying to do before anything goes through.<br><br>I do have a transcript that Mr. Hadley gave me.  I think that's his transcript, you know, of everything he went through and this and that.  And I have one of mine which is totally different than what he has.  You know, some of the stuff is the same things, but he went a little further.  And if I have him [the new attorney] I can give him the folder and let him look through it. |
| The Court: | You don't qualify for the public defender's services? |
| Bettelli: | I was told by the other judge that I make too much money; that I wouldn't qualify.  But I have – nobody said that I couldn't or can't. |
| The Court: | How much money do you make? |

| Bettelli: | Eleven dollars an hour, and sometimes I don't get over 40 hours.  Like I said, I got 20 hours last week.  That's $220 take home. |
| The Court: | You can attempt to apply for the public defender. |
| Bettelli: | Well, I was told that I couldn't because I made too much money. |
| The Court: | You can apply. |
| Bettelli: | I was always told at the last hearing that I couldn't qualify because I make too much money, so I didn't further the issue. |
| The Court: | Judge White is probably right on that, but I'm saying you can still file and application if your circumstances have changed. |

(Id. at 23-26).

Judge Lobaugh then advised Bettelli that "if you are going to get an attorney, you need to get one now."  (Id. at 26).  He continued:

| The Court: | I believe you have explained the circumstance of why you do not have an attorney at this point.  You did have Mr. Hadley.  There was a problem with money and a dispute regarding the work he had done and the work that he did not do, and basically you agreed to fire him or agreed to allow him to withdraw. |
| Bettelli: | Yes, sir. |
| | - - - |
| The Court: | Are you certain that you understand that if you do not retain an attorney you will be required to proceed in this case representing yourself and that when your case is called to trial you will be required to defend yourself at trial without assistance of counsel or with only standby counsel to assist you? |
| Bettelli: | Yes, sir. |
| The Court: | I guess at this point you really need to make a serious effort to obtain counsel if you want counsel. |

(Id. at 28-30).

At the conclusion of the hearing, Judge Lobaugh issued an oral order in which he stated that Bettelli's trial was continued to the November 2004 trial term and that "[t]he Court has conducted a

waiver of legal counsel colloquy with the defendant, and the Court is satisfied that the defendant understands his legal position regarding being required to proceed to trial without counsel if he does not promptly hire an attorney."  (Id. at 30).

After the hearing, Bettelli applied to the Public Defender's Office for representation.  "The Chief Public Defender, at the time John C. Lackatos, Esquire, denied representation because Mr. Bettelli was *well over the income guidelines used by [the] office to determine income eligibility*."  (Public Defender's Application for Leave to File Original Process, filed with the Pennsylvania Supreme Court, 16 WM 2005 (Pa. Mar. 11, 2005) (emphasis added)).

On November 18, 2004, Bettelli filed a *pro se* motion to continue the trial for the reason that "I am a truck driver and will be out of town for jury selection."  (11/18/04 Def's Motion).  The court granted the motion and continued the case to the December 6, 2004, trial term.  In response, the Commonwealth filed a motion to continue because it "will be using expert witnesses who need advance notice of at least two months and are unavailable [on] short notice."  (11/30/04 Pros. Motion).  The court granted that motion and scheduled Bettelli's trial "for March 17, 2005, with jury selection on March 7, 2005."  (11/30/04 Order).

On February 6, 2005, Bettelli filed another *pro se* motion in which he asked that his trial be continued until June of 2005 because "I'm still trying to come up with $2,500 more for an attorney[.]" (2/6/05 Def's Motion).  The court denied the motion because Bettelli had already received several continuances.  (2/9/05 Order).

On March 7, 2005, the date scheduled for jury selection, the Commonwealth filed a motion "to appoint standby counsel for the limited purpose of cross-examining the victim for the reason that the victim is a young child who may be unduly traumatized if cross-examined by the defendant."  (3/7/05

Pros. Motion).  Before proceeding with jury selection, Judge White addressed the motion and other

issues related to Bettelli's failure to retain counsel:

| | |
|---|---|
| The Court: | We have a motion filed by the Commonwealth … to appoint standby counsel.  Mr. Bettelli, what are your plans as far as counsel[?] |
| Bettelli: | … I'm trying to save up.  I did change my job to a better pay, make better money, I just needed a few more months to come up with the cash and I could have got myself an attorney, but that's, like I said, it's my problem, I'll have to try to deal with it the best I can.  At this moment I'm still representing myself until you know, for every day I'm going and I'm working and I get paid.  If I have that money by that time and I still can have an attorney represent me, I'll just try to do my best at that time.  But as of right now, I still need more time sir.  I'm working five, six days, I'm on the road.  I get paid every two weeks. |
| The Court: | Mr. Bettelli, these are really serious charges. |
| Bettelli: | Yes sir. |
| The Court: | Frankly, I can't for the life of me understand your approach to doing this.  You apparently, the P.D. – I assume that at one point or another you applied for a P.D. right? |
| | - - - |
| Prosecutor: | Your Honor, … I believe that Mr. Lewis [the acting Public Defender] was in the room when we had this discussion before on the record and Mr. Lewis informed him that he made too much money while we were in court. |
| The Court: | If you're convicted of these charges, you know, the – you won't be earning any money. |
| Bettelli: | I understand that. |
| The Court: | You'll be in prison for probably – |
| Bettelli: | Life. |
| The Court: | I didn't say life, but you'd be in prison probably for at least five to twenty years. |
| | - - - |
| | You know, you're spending money on things that are– you submit day to day may seem important to you, but making a car payment is not nearly as important as staying out of jail for five years. |

Bettelli:    In your eyes it might not be, in mine it is…. My life is just, for building and becoming somebody has been getting me better, you know, I've bettered myself in a lot of areas. You know and I just, eh, I'm in a position and I understand that I have to abide by the rules and laws, you know.

The Court:   Alright, well let's just reflect for the record here. At this point the information in this case was filed back on April 8, 2004. It shows that the events were have said to have occurred November 1, 2002 through Thursday the 31st day of July 2003. You were charged with these felony crimes….

The complaint was filed on February 13th of last year… [O]n August 20th we had another hearing and I tried to work out a payment plan between you and Mr. Hadley, but you were unwilling to commit to that, so we allowed Mr. Hadley to withdraw. The record further shows that Judge Lobaugh conducted what we call a colloquy with you on September 24th and he made a finding that you understand your right to counsel and that you're going to go to trial if you don't have counsel. Again, this is September and now it's March the 7th and the case is getting older and older and hence we're not going to continue the case any further. You're going to go to trial this trial term and apparently you're going to go to trial without a lawyer. Now, I have a motion from the District Attorney to appoint standby counsel and I guess we'll do that. Standby counsel will not be representing you, you understand that? Standby counsel's role is simply to tell you how to do the case yourself[.] You have a constitutional right to represent yourself. You have a constitutional right to hire any lawyer that you want at your expense and if you're indigent you have a constitutional right to free counsel. Apparently, you're not indigent. Apparently, you choose not to hire a lawyer, so therefore, the only option left to the court is that you represent yourself. So, you're going to go to trial this term, we'll be picking the jury this afternoon and I am going to direct the Public Defender to give you standby counsel. Now, standby counsel means he's not going to try the case; he's only going to sit there beside you and tell you how to do it. And I have to say to you, in my mind you're being something close to an idiot here. And for you to establish the priorities in your life the way you've established them over the last year, borders on lunacy. But you know, it's your life, I can't live it for you and I certainly can't hold a gun to your head and tell you to get counsel. You're free to not get counsel if that's what you choose to do and apparently that's the election you've made.

                - - -

AND NOW, this 7th day of March 2005, the Defendant appears again without counsel.

> The Defendant has told the court that he is trying to raise the money to
> secure counsel, but of course the Defendant has had since the beginning of
> the case to raise money for counsel.
>
> The court had just recited in this hearing, the extensive history the court
> has had trying to get the Defendant to get counsel, and the Defendant has
> failed to do so.  It is now March, one year later, and we see no choice but
> to proceed with the case.
>
> The Venango County Public Defender is appointed as standby counsel,
> and either the Public Defender or a lawyer in that office will meet with the
> Defendant today and assist him in picking a jury as standby counsel.
>
> The motion that standby counsel cross-examine the victim is left for the
> Trial Judge to address once standby counsel is selected.

(3/7/05 Motion for Discovery and Appt. of Standby Counsel Hr'g Tr. at 2-11).

That same day, acting Public Defender Lewis appeared before Judge White and filed a motion in which he requested that the judge reconsider his appointment of an attorney from his office as standby counsel because Bettelli did not qualify for Public Defender assistance.  Judge White denied the motion and stated that it was within his discretion to appoint a public defender as standby counsel under the circumstances.  (Id. at 14-18).

Lewis appeared as standby counsel and assisted Bettelli during the jury selection proceedings that occurred later that afternoon.  (See 3/7/05 Jury Selection Hr'g Tr.).  The jury was picked that day, and Bettelli was left with ten days to either secure counsel or proceed *pro se* with Lewis as his standby counsel at his March 17, 2005, trial.

Several days before Bettelli's trial was set to commence, Lewis filed a petition for a writ of prohibition with the Pennsylvania Supreme Court.  Therein, Lewis sought to invalidate the trial court's appointment of him as standby counsel, arguing that it violated the Public Defender's right to determine qualifications for representation pursuant to the Public Defender Act,16 P.S. §§ 9960.1, *et seq*.  The

Pennsylvania Supreme Court accepted the writ for filing but refused to grant the requested stay of Bettelli's trial.

Bettelli's trial was held as scheduled on March 17, 2005.  Judge Lobaugh presided.  Bettelli did not hire private counsel.  Therefore, he proceeded *pro se* with Lewis as standby counsel.  At the beginning of the proceeding, Judge Lobaugh met with counsel and Bettelli in chambers to discuss the prosecution's motion that standby counsel cross-examine the victim.  Judge Lobaugh advised Bettelli that he had the right to cross-examine all the witnesses in the case, including the victim.  Bettelli stated that he wanted to do so.  Accordingly, Judge Lobaugh denied the Commonwealth's motion, and Bettelli was permitted to cross-examine the victim.  (3/17/05 Trial Tr. at 1, 42-57).

Bettelli testified in his own defense, with Lewis conducting his direct examination.  (Id. at 148-58).  At the conclusion of the trial, the jury convicted him of rape, rape of a child, two counts of involuntary deviate sexual intercourse, aggravated indecent assault, and indecent assault.  On June 14, 2005, the court sentenced him to a total aggregate sentence of 204-600 months' imprisonment.

In the meantime, the litigation of the Public Defender's petition before the Pennsylvania Supreme Court continued.  In April of 2005, Judge White issued an Opinion in Support of his decision to appoint that office as standby counsel.  He stated, in relevant part:

> [T]his judge, in every case where a defendant is representing himself *pro se*, has always appointed standby counsel…. We considered, consistent with our practice – re-appointing Mr. Hadley to represent the defendant since he had been his original counsel and there would be some continuity as he had gone through the preliminary hearing with the defendant, although he had not represented the defendant since August 2004… [H]owever, this Judge was aware that Mr. Hadley had a two-day trial in front of this Judge, on the two days immediately before this case was scheduled for trial [before Judge Lobaugh].  We were concerned that Mr. Hadley, since he had a trial the two days before this case would be unable to appear for this defendant if for some reason his case before this judge went beyond two days.  Therefore, we considered who to appoint and we chose the Venango County Public Defender…. The public defender's office had three competent lawyers, they were not extraordinarily busy at the time, and funding in this county for any appointed lawyer in a criminal case is paid out of the public defender's

11

budget in any event.…  Furthermore, our decision was not a function of the Public Defender making the decision the defendant was not qualified financially.  In this case clearly, the defendant was not qualified as he was gainfully employed as an over-the-road truck driver.  The defendant had been dilatory in not getting counsel.  We had no indication the defendant was ever going to get counsel if we gave him another continuance since we had been up this road with this defendant several times before.  We were at a point where we needed to force the defendant to trial.  Frankly, our hope was the defendant, once he knew he was going to trial, would then secure counsel.  That has been our experience probably in three out of four cases; the defendant, when finally forced to trial, does then secure counsel.  In this case the defendant did not secure counsel and did go to trial and was convicted *pro se*.  The Public Defender did represent the defendant as standby counsel.

       [In its March 7, 2005, motion to reconsider,] [t]he Public Defender contended that we did not have authority to appoint them[.]… We disagree, and hence, we denied the Public Defender's request to reconsider.…  As it turned out, the trial judge ultimately did allow [over the Commonwealth's objections] the defendant to, himself, cross-examine the child victim[ ] during the trial.… We knew that the Public Defender would give the defendant competent standby counsel, which he needed with these serious charges.  Furthermore, it was our fervent hope that in forcing the defendant to trial at this point, since he still had ten days until the trial of the case, that he would secure private counsel and then this serious matter would be in the hands of a competent lawyer rather tha[n] the defendant *pro se*.

(Public Defender's Office of Venango Cnty., 16 WM 2005, slip op. at 5-8).  The Pennsylvania Supreme

Court subsequently held that Judge White had not abused his discretion and it therefore denied the

Public Defender's petition.  Public Defender's Office of Venango Cnty. v. Venango Cnty. Court of

Common Pleas, 893 A.2d 1275, 1281-82 (Pa. 2006).

      After a series of events that are not relevant here, Bettelli, through court-appointed counsel

Matthew C. Parson, Esquire, filed a notice of appeal with the Superior Court of Pennsylvania.  He

presented the following claims:

1.      Whether the trial court erred as a matter of law by failing to colloquy [him] on whether his waiver of constitutional right to be represented by legal counsel, pursuant to the United States Constitution … was made knowingly, intelligently, and voluntarily, which prejudiced the defendant's ability to present evidence, assert a meritful defense, and make objections.

2.      Whether the pretrial judge erred as a matter of law or abused his discretion by determining that [he] forfeited his constitutional right be represented by legal counsel, pursuant to the United States Constitution … which prejudiced [his] ability to present evidence, assert a meaningful defense, and make objections.

3.      Whether there was sufficient evidence to convict the defendant of the counts in which he was sentenced when the Commonwealth could not establish a specific time of the alleged sexual assault.

(Commonwealth v. Bettelli, No. 283 WDA 2008, slip op. at 4-5 (Pa.Super. Nov. 5, 2008) (quoting Bettelli's appellate brief at 5)).  These are the same grounds for relief that Bettelli raises in this habeas proceeding.

On November 5, 2008, the Superior Court issued a Memorandum in which it denied Bettelli's claims on the merits.  (Id. at 5-16).  In this habeas proceeding, Bettelli takes issue with the Superior Court's decision and contends that he is entitled to an order from this Court directing that he be released from his judgment of sentence, or, at a minimum, receive a new trial.  Respondents have filed their Answer [ECF No. 17], and Bettelli has filed a Reply [ECF No. 22].

**B.      Discussion**

**1.      Standard of Review**

This case is governed by the federal habeas statute applicable to state prisoners, 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214, April 24, 1996 ("AEDPA").  Under this statute, habeas relief is only available on the grounds that Bettelli's convictions were obtained in violation of his federal constitutional rights. 28 U.S.C. § 2254(a).  Errors of state law are not cognizable.  See, e.g., Priester v. Vaughn, 382 F.3d 394, 402 (3d Cir. 2004) ("Federal courts reviewing habeas claims cannot 'reexamine state court

determinations on state-law questions.'"), quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)).  See also Real v. Shannon, 600 F.3d 302, 309-10 (3d Cir. 2010).

In describing the role of federal habeas proceedings, the U.S. Supreme Court, in Barefoot v. Estelle, 463 U.S. 880, 887 (1983), noted:

> [I]t must be remembered that direct appeal is the primary avenue for review of a conviction or sentence.... The role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited.  Federal courts are not forums in which to relitigate state trials.

Several years after the Court made this observation, Congress enacted AEDPA, which "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).  It "requires federal courts collaterally reviewing state proceedings to afford considerable deference to state courts' legal and factual determinations."  Lambert v. Blackwell, 387 F.3d 210, 234 (3d Cir. 2004).

As codified at 28 U.S.C. § 2254(d), AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was *adjudicated on the merits in State court proceedings* unless the adjudication of the claim–
>
> > (1) resulted in a decision that was *contrary to,*[5] *or involved an unreasonable application of,*[6] *clearly established Federal law, as determined by the Supreme Court of the United States*; or

---

[5]     "A state-court decision is 'contrary to' clearly established federal law if the state court (1) 'contradicts the governing law set forth in [the Supreme] Court's cases' or (2) 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a [different] result.'"  Lambert, 387 F.3d at 234, quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000).

[6]     "A state-court decision 'involve[s] an unreasonable application' of clearly established federal law if the state court (1) 'identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case'; or (2) 'unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'"  Lambert, 387 F.3d at 234, quoting Williams, 529 U.S. at 407.

(2) resulted in a decision that was based on an *unreasonable determination
of the facts in light of the evidence presented in the State court proceeding*.

(Emphasis added).

As the Supreme Court recently emphasized:  "§ 2254(d)(1) requires federal courts to focus on

what a state court knew and did, and to measure state-court decisions against this Court's precedents as

of the time the state court renders its decision."  Greene v. Fisher, — U.S. — , 132 S.Ct. 38, 44 (2011)

(citations and quotations omitted).  In this case, the relevant decision is the Superior Court's

Memorandum, which it issued on November 5, 2008.

Because the Superior Court adjudicated Bettelli's claims on the merits, this Court's analysis of

them is governed by AEDPA's standard of review as codified at 28 U.S.C. § 2254(d).[7]  The Supreme

Court recently stressed the "highly deferential" approach that this Court must take when it is reviewing a

state court's decision under § 2254(d):

> We have explained that "an unreasonable application of federal law is different from an
> incorrect application of federal law."  Williams v. Taylor, 529 U.S. 362, 410, 120 S.Ct.
> 1495, 146 L.Ed.2d 389 (2000).  Indeed, "a federal habeas court may not issue the writ
> simply because that court concludes in its independent judgment that the relevant state-
> court decision applied clearly established federal law erroneously or incorrectly."  Id., at
> 411, 120 S.Ct. 1495.  Rather, that application must be "objectively unreasonable."  Id., at
> 409, 120 S.Ct. 1495.  This distinction creates "a substantially higher threshold" for
> obtaining relief than *de novo* review.  Schriro v. Landrigan, 550 U.S. 465, 473, 127 S.Ct.
> 1933, 167 L.Ed.2d 836 (2007).  AEDPA thus imposes a "highly deferential standard for
> evaluating state-court rulings," Lindh v. Murphy, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059,
> 138 L.Ed.2d 481 (1997), and "demands that state-court decisions be given the benefit of
> the doubt," Woodford v. Visciotti, 537 U.S. 19, 24, 123 S.Ct. 357, 154 L.Ed.2d 279
> (2002) (per curiam).

Renico v. Lett, — U.S. — , 130 S.Ct. 1855, 1862 (2010).  The Supreme Court also has recently

elaborated:

---

[7]     Bettelli requests that this Court conduct an evidentiary hearing.  His request is denied because the Superior Court
adjudicated his claims on the merits and therefore this Court's review is limited to the record that was before the state court.
Cullen v. Pinholster, — U.S. —, 131 S.Ct. 1388, 1398-1401 (2011).  See also Brown v. Wenerowicz, 663 F.3d 619, 628-29
(3d Cir. 2011); Roundtree v. Balicki, 640 F.3d 530, 538 (3d Cir. 2011).

If this standard is difficult to meet, that is because it was meant to be.  As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  Cf. Felker v. Turpin, 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244).  It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther.  Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal.  Jackson v. Virginia, 443 U.S. 307, 332, n. 5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment).  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Harrington v. Richter, — U.S. —, 131 S.Ct. 770, 786-87 (2011).  See also Wiggins v. Smith, 539 U.S. 510, 521 (2003) (it is not enough for a petitioner to show that the state court's adjudication of any of his claims was an "incorrect or erroneous" application of U.S. Supreme Court precedent); Waddington v. Sarausad, 555 U.S. 179, 190 (2009) (where it is the state court's application of governing federal law that is challenged, "the state court's decision must be shown to be not only erroneous, but objectively unreasonable.") (internal citations and quotations omitted).

### 2.      Denial of Right to Counsel

Bettelli contends, as he did in his appeal to the Superior Court, that he did not waive or forfeit his right to counsel and that the trial court "forced" him to represent himself at his trial in violation of Sixth Amendment right to assistance of counsel.  The Superior Court rejected Bettelli's Sixth Amendment claims.  It first explained that under Pennsylvania law:

> Although a criminal defendant has the right to be represented by counsel, the right can be waived or forfeited….  Waiver is "an intentional and voluntary relinquishment of a known right."  It is well established that waiver of the right to counsel is valid only if it is made voluntarily, knowingly and intelligently.  By contrast, forfeiture … does not require that the defendant intend to relinquish a right, but rather may be the result

> of the defendant's "extremely serious misconduct" or "extremely dilatory conduct."
>
> Commonwealth v. Coleman, 905 A.2d 1003, 1007 (Pa.Super. 2006) (citations omitted). The colloquy necessary to achieve a voluntary and intelligent waiver of counsel under Pa.R.Crim.P. 121 … is not necessary in a forfeiture situation. Id. at 1008. However, in the absence of conduct that would constitute forfeiture, where "a defendant asserts his inability to afford counsel despite being ineligible for free representation through the public defender" the court is required to conduct a proper colloquy under Rule 121. Commonwealth v. Houtz, 856 A.2d 119, 125 (Pa.Super. 2004) (citation omitted).

(Bettelli, No. 283 WDA 2008, slip op. at 5).[8]

The Superior Court concluded that Bettelli knowingly, intelligently, and voluntarily waived his right to counsel at the September 24, 2004, hearing. (Id. at 6-13). It also held that the trial court did not err in denying Bettelli's last request for a continuance, thus implicitly holding that, although he may have wanted the assistance of counsel, he forfeited his right to counsel by failing to hire one in the more than five months following his September hearing:

> [T]he record supports the trial court's determination that [Bettelli] knowingly, intelligently, and voluntarily waived his right to counsel. [Bettelli] indicated his understanding that he had the right to free counsel only if he was indigent, which he was determined not to be. Nevertheless, [Bettelli] continuously failed to hire new counsel after Attorney Hadley was permitted to withdraw for [Bettelli's] failure to pay him and, as the trial court noted, [Bettelli] decided to, for example, make payments on his truck instead. Although we understand [Bettelli's] argument that keeping the truck was necessary for his employment, the issue of whether the Public Defender's office should have determined that [Bettelli] was indigent and qualified for free counsel is not before us. Rather, on this record, [Bettelli] clearly indicated his understanding of the right to counsel, of the importance of obtaining counsel, and of all of the other necessary areas of inquiry as required in the colloquy (e.g., awareness of the charges and potential sentences). In fact, the court's extensive colloquy … went beyond the minimum requisite six areas of inquiry of Rule 121. Moreover, the trial court afforded [Bettelli] ample time in which to hire new counsel with [Bettelli] continually attempting to delay the process. With [Bettelli] not qualifying for a free public defender, with his continued failure to hire

---

[8]      In Coleman, the Pennsylvania Superior Court found "the jurisprudence of the Third Circuit Court of Appeals" on the issue of waiver and forfeiture of counsel "to be both instructive and persuasive." 905 A.2d at 1008 (citing Wilkerson v. Klem, 412 F.3d 449 (3d Cir. 2005). See also id. at 1007 (citing Commonwealth v. Thomas, 879 A.2d 246 (Pa.Super. 2005), which cited United States v. Goldberg, 67 F.3d 1092 (3d Cir. 1995), Fischetti v. Johnson, 384 F.3d 140 (3d Cir. 2004), and United States v. Leggett, 162 F.3d 237 (3d Cir. 1998)).

counsel, and in light of the extensive waiver colloquy conducted by the court in which [Bettelli] throughout indicated his understanding, we can discern no trial court error.

(Id. at 13-14).

If this Court had presided over Bettelli's criminal case, perhaps Attorney Hadley would not have been permitted to withdraw in August of 2004, or perhaps Bettelli would have been granted another continuance.  Or, this Court may have handled the case exactly as the state court did.  After all, although Bettelli had indicated at the September 24th hearing that it was his intent to secure private counsel, he acknowledged that he understood that if he subsequently failed to do so the court would deem him to have waived (or more accurately forfeited) his right to counsel and that he would be required to proceed to trial *pro se*.  (9/24/04 Hr'g Tr. at 3-4, 24-31).  At the conclusion of that hearing, Judge Lobaugh entered an order granting him a continuance of the trial date until November of 2004, so that he could have additional time to hire an attorney.  (Id. at 24-25, 29-30).  The Public Defender's Office determined that he did not qualify for its assistance and so that option was unavailable to him.  As it turned out, Bettelli's trial was continued two more times, until March of 2005.  Thus, *he had more than five months to hire counsel and failed to do so*.  In the meantime, he continued to work, but chose to put his earnings towards things other than hiring an attorney.

The issue before this Court, however, is not whether we agree with the way the trial court handled the matter or whether the Superior Court's decision to deny Bettelli's Sixth Amendment claims was right or wrong.  See, e.g., Renico, 130 S.Ct. at 1862; Fischetti, 384 F.3d at 145 (holding that the state court had committed an error in compelling the defendant to proceed *pro* se, but that "it was not error of a magnitude to warrant vacating the conviction on our habeas review.").  Under AEDPA, this Court can grant Bettelli the relief he seeks only if it is concluded that the Superior Court's decision to deny him relief on his Sixth Amendment claims "was contrary to, or involved an unreasonable

18

application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]"  28 U.S.C. § 2254(d)(1).  Two decisions from the U.S. Court of Appeals for the Third Circuit guide this Court's analysis of those questions:  Fischetti v. Johnson, 384 F.3d 140 (3d Cir. 2004) and Wilkerson v. Klem, 412 F.3d 449, 452 (3d Cir. 2005).

In Fischetti, that state court had denied Fischetti's motion for the appointment of new counsel, finding that the previously appointed counsel was providing effective representation.  The court gave Fischetti three options:  continue to trial with present counsel representing him, represent himself with present counsel assisting as co-counsel, or represent himself without co-counsel.  When Fischetti declined all three options, the court ordered the trial to go forward with Fischetti representing himself.  Following conviction and direct appeal, Fischetti sought habeas relief in federal court.

The district court denied Fischetti's habeas petition.  He appealed to the Court of Appeals, which began its analysis by cautioning that, since AEDPA's standard of review applied, "at the outset, we must articulate the issue presented to the state court precisely."  Fischetti, 384 F.3d at 150.  It then framed the issue as whether Fischetti, by his conduct, had forfeited his Sixth Amendment right to counsel:

> Here, Fischetti refused to make a choice between proceeding with current counsel and proceeding *pro se*.  Effectively, he sought to defeat the trial court's denial of his motion for yet another new counsel.  In essence, the state court treated him not as if he had waived the right to his attorney but as having forfeited that right.  See Goldberg, 67 F.3d at 1101-02.  We must therefore examine whether there is "clearly established" Supreme Court law on forfeiture of the right to counsel.

Id.  The Court of Appeals then concluded that the state court's decision was not "contrary to" Supreme Court precedent under § 2254(d)(1):

> The Supreme Court has on numerous occasions made clear that the right to counsel can only be waived voluntarily and knowingly.  McKaskle v. Wiggins, 465 U.S. 168, 173 (1984); Faretta [v. California, 422 U.S. 806, 835 (1975)]; Adams v. United States ex rel. McCann, 317 U.S. 269, 279 (1942).  But the Court's established precedent in this area has not expressly dealt with the matter of forfeiture of counsel, which is the exact issue here. As we have discussed, forfeiture and voluntary waiver are conceptually separate.

19

Moreover, the Supreme Court's prior decisions have not involved facts that are "materially indistinguishable" from the facts surrounding Fischetti's actions in this case. See Williams, 529 U.S. at 406[.]; Moore[ v. Morton, 255 F.3d 95, 107 (3d Cir. 2001)]. *It follows that the state court ruling here was not contrary to federal law as articulated by decisions of the Supreme Court.*

Id. (parallel citations omitted) (emphasis added).

The Court of Appeals next considered whether the state court's decision was "an unreasonable

application" of Supreme Court's precedent under § 2254(d)(1):

Whether the state court unreasonably applied the Court's precedent presents a closer question…. Undoubtedly, the Supreme Court has made clear that the right to counsel at trial is fundamental and cannot be actually waived except voluntarily and knowingly. As the Court has observed, there is a "strong presumption" against the waiver of the right to counsel. Patterson v. Illinois, 487 U.S. 285, 307 (1988). And, as we have pointed out above, the assistance of counsel, not self-representation, is the presumptive position. See Martinez [v. Court of Appeals of California, Fourth Appellate Dist., 528 U.S. 152, 161 (2000)]. Thus, if our role on habeas review were to determine if the state judge properly extrapolated the general principles that can be derived from Faretta, Patterson, and Martinez to this different factual setting, we might disagree with the state court ruling.

That is not our role. In reviewing the reasonableness of the state courts' application of Supreme Court precedent, we must use as our point of departure the specific holdings of the Court's decisions. When assessing whether the state court acted reasonably in applying or refusing to apply that precedent, we must be mindful that the issue is whether Supreme Court law "dictated" a result in our case, Teague [v. Lane, 489 U.S. 288, 301 (1989)] (plurality); see Moore [v. Morton, 255 F.3d 95, 104-05 (2001)], or whether the circumstances presented here were "closely analogous" to those that formed the basis of earlier high court decisions, Penry [v. Lynaugh, 492 U.S. 302, 314 (1989)] (internal quotations and citations omitted).

As we have observed, no Supreme Court case has dealt specifically with the case of a defendant who is unwilling to proceed either with or without counsel because he has been denied the particular counsel of his choice. Accordingly, none of the precedential decisions provides a template that fits the facts here. Nor has the Supreme Court expressly ruled out forfeiture of counsel. Indeed, the Supreme Court has recognized that the parallel rights to counsel and to self-representation cannot be manipulated to frustrate the orderly processes of the trial court. In Faretta, for example, the Court warned that the "right of self-representation is not a license to abuse the dignity of the courtroom." 422 U.S. at 834 n. 46; accord McKaskle [v. Wiggins, 465 U.S. 168, 184 (1984)].

More importantly, the Supreme Court has made clear that Sixth Amendment rights generally are not amenable to forfeiture. Through misconduct, defendants can outright forfeit trial rights as fundamental as the Sixth Amendment right to counsel. The

20

Confrontation Clause of the Sixth Amendment for example, guarantees that a defendant can be present in the courtroom throughout a criminal trial. The Supreme Court held in Illinois v. Allen, 397 U.S. 337, 343 (1970), however, that a defendant can lose that right if he is disruptive in court after being warned by the judge. Indeed, the court upheld exclusion notwithstanding the availability of alternative coercive measures that might have served to discipline the misbehaving defendant. Id. at 344-46. Likewise, in Taylor v. United States, 414 U.S. 17 (1973) (per curiam), the Court affirmed a decision to proceed with a trial after a defendant failed to return after a recess. The Court rejected the argument that the absence could not be construed as a knowing waiver in the absence of an explicit warning that the trial would continue if he absconded. It held the trial could continue because the court's power to try a case "'may not be defeated by conduct of the accused that prevents the trial from going forward.'" Id. at 20 (quoting Allen, 397 U.S. at 349 (Brennan, J., concurring)).

These decisions certainly provide a basis to conclude, as the state judge did in this case, that defiant behavior by a defendant can properly cost that defendant some of his Sixth Amendment protections if necessary to permit a trial to go forward in an orderly fashion. This precedent, therefore, cuts against a finding that the trial judge unreasonably applied Supreme Court case law in responding to Fischetti's obduracy by mandating that he proceed without counsel. Additional support for the reasonableness of the state court's application of Supreme Court precedent is found in rulings of other courts, including our own, that uphold at least limited forfeitures of right to counsel. See Price [v. Vincent, 538 U.S. 634, 642-43 & n. 2 (2003)] (relying on other decisions as indications of reasonable interpretation); Moore, 255 F.3d at 104-05 n. 8 (same).

As we have already discussed, we confronted forfeiture and waiver by conduct in Goldberg. While we found in that case an insufficient factual predicate to apply either doctrine, we did read the applicable Supreme Court cases as allowing forfeiture and waiver by conduct of counsel. We cited Illinois v. Allen as approving the decision to "deprive a defendant of a fundamental constitutional right at least where the defendant is aware of the consequences of his actions, but regardless of whether the defendant affirmatively wishes to part with that right." Goldberg, 67 F.3d at 1101. We revisited the forfeiture issue in United States v. Leggett, 162 F.3d 237 (3d Cir. 1998). There, a defendant physically attacked his trial counsel at sentencing. After release from the hospital, counsel understandably sought to withdraw. The district court granted the application and "concluded that Leggett had forfeited his right to counsel for the sentencing hearing." Id. at 240. We affirmed. See also United States v. Jennings, 855 F.Supp. 1427 (M.D.Pa. 1994) (assault on appointed attorney waives counsel "by implication"), aff'd, 61 F.3d 897 (3d Cir. 1995) (table).

Other circuits have also interpreted Supreme Court decisions to be consistent with forfeiture of the right to counsel. These cases have interpreted the law to require defendants to go to trial unrepresented when they have failed to hire counsel within a reasonable time, United States v. Bauer, 956 F.2d 693 (7th Cir. 1992); United States v.

21

Mitchell, 777 F.2d 248 (5th Cir. 1985), or have abused counsel, United States v. McLeod, 53 F.3d 322 (11th Cir. 1995).

None of these cases approves the specific decision made by the trial judge here.  But the appellate cases do establish that the Supreme Court's general right to counsel decisions are reasonably read as qualified by the trial court's power to remedy abuse of that right through forfeiture.  Further, none of these cited appellate cases saw in the Supreme Court's precedents any clear guidance as to the precise standard to be applied before forfeiture can be triggered.  Put another way, the Supreme Court has not fully defined when a defendant's misconduct or defiance warrants a forfeiture.  Our canvass of decisions of our own and sister courts reinforces our view that the state court order that Fischetti proceed without counsel was not an objectively unreasonable application of Supreme Court case law under the Sixth Amendment.  Williams, 529 U.S. at 409-10.

The Second Circuit has reached a similar result.  In Gilchrist v. O'Keefe, 260 F.3d 87 (2d Cir. 2001), the Court entertained a § 2254 petition brought by a defendant whose counsel was discharged before sentencing after defendant punched counsel in the ear.  Although the Court of Appeals indicated that a forfeiture based on one incident might be constitutionally unwarranted, id. at 89, it held that the state courts' decision upholding the forfeiture was neither contrary to Supreme Court cases nor an unreasonable application of those cases.  Gilchrist concluded that the Supreme Court's "recognition that other important constitutional rights may be forfeited based on serious misconduct" counsels against a finding that the state court was unreasonable in concluding that the defendant had forfeited his right to counsel by his single act of violence.  Id. at 97.  We apply the same logic in reaching the result here.

The state court's mandate that Fischetti proceed pro se was error, but was not contrary to, or an unreasonable application of, Supreme Court precedent.

Id. at 150-53 (footnote and parallel citations omitted).

In Wilkerson, the Court of Appeals once again had to determine whether the state court's

decision that a defendant had forfeited his right to counsel was "contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court" pursuant to

§ 2254(d)(1).  In that case, Wilkerson told the court at his March 16, 1998, pre-trial hearing that he

wanted his counsel to "step down."  Wilkerson, 412 F.3d at 450.  The court allowed counsel to withdraw

and scheduled the trial for the following month, on April 13, 1998.  The court informed Wilkerson:

"You or your family has to get busy and hire a lawyer within the next few days."  Id. at 451.  Wilkerson

appeared on April 13, 1998, for his scheduled to commence.  Although he had been appointed a Public

Defender to represent him in a separate case, he had not applied for such assistance in the case at hand and had no counsel to represent him.  Wilkerson told the court he was still in the process of trying to engage a lawyer.  The court decided to proceed to trial and appointed an attorney from the Public Defender's Office to act as standby counsel.  The court explained its decision as follows:

> I made it very clear to you when we continued this case last term in March … that you would need new counsel.
>
>               - - -
>
> You knew this case was coming up today.  You knew you needed an attorney, and I don't know why you didn't apply for one.
>
> We're not going to delay the system, delay justice, and inconvenience witnesses while you fool around in deciding to get an attorney or not.
>
> It doesn't make any sense that your family is looking for a lawyer for you on one charge, and at the same time you're applying for a public defender in another case.  You can afford counsel or you can't.
>
> If you can't afford counsel, you should have gone to the Public Defender's Office for this charge as well as the other.  I think you'd qualify since you're under a state prisoner sentence right now, but be that as it may, we're taking this case to trial.

Id.

Following his conviction, Wilkerson appealed to the Superior Court and argued, as Bettelli does here, that he was denied his right to counsel.  The Superior Court denied his claim and affirmed his judgment of sentence.  Wilkerson then sought federal habeas relief, which the district court denied.  On appeal, the Court of Appeals framed the issue that was presented to Wilkerson's state court as:

> whether a criminal defendant who has been duly notified of the date of his trial, who has been advised to obtain counsel in sufficient time to be ready for trial, and who appears on the scheduled date without counsel and with no reasonable excuse for his failure to have counsel present, forfeits his Sixth Amendment right to counsel.

Id. at 454.

The Court of Appeals concluded that Fischetti commanded that Wilkerson was not entitled to habeas relief:

Turning to the first prong of § 2254(d)(1), *there is no Supreme Court precedent dealing with the forfeiture of counsel, and no prior decision of that Court involves facts "materially indistinguishable" from those presented here. Accordingly, the state court decision we review is not "contrary to ... clearly established" Supreme Court law.*

With respect to whether the decision we review involves an unreasonable application of clearly established Supreme Court law, we emphasize, as did the <u>Fischetti</u> Court, that "we must use as our point of departure the specific holdings of the" Supreme Court.  <u>Id.</u> at 151.  *It remains true that there are no Supreme Court decisions involving forfeiture of the right to counsel and a fortiori no decisions providing any clear guidance as to the "standard to be applied before [it can be concluded that] a defendant's misconduct warrants a forfeiture."  <u>Id.</u> at 152.  It necessarily follows that the state court's decision here was not an unreasonable application of Supreme Court precedent.*
       - - -

Even if this Court could glean from federal circuit court precedents a serious misconduct forfeiture standard which does not encompass Wilkerson's behavior in this case, that does not compel the conclusion that the state court's forfeiture finding was an objectively unreasonable application of Supreme Court precedent under section 2254.  Because no clear forfeiture standard has been articulated by the Supreme Court, it cannot be said that the state court in this case acted unreasonably when it found forfeiture, even though Wilkerson's actions fell short of the sort of "extremely serious misconduct" that this Court found present in <u>United States v. Leggett</u>, 162 F.3d 237 (3d Cir. 1998), and <u>Goldberg</u>, 67 F.3d at 1102.  It is not sufficient to say that Wilkerson's actions did not rise to the level of conduct that has constituted forfeiture in the past; the issue is whether the state court's application of forfeiture to Wilkerson's case was precluded by Supreme Court precedent.  In this regard, we re-state our position in <u>Fischetti</u> that the Supreme Court's holdings in <u>Illinois v. Allen</u>, 397 U.S. 337 (1970), and <u>Taylor v. United States</u>, 414 U.S. 17 (1973), provide state courts with a "basis to conclude" that certain obstructive conduct by a defendant may constitute a forfeiture of Sixth Amendment protections.  <u>Fischetti</u>, 384 F.3d at 151.

<u>Id.</u> at 454-56 (emphasis added).

Thus, the state court had given Wilkerson, who had indicated his desire to have counsel, only one month to retain an attorney to represent him at his trial.  When he appeared before the court on the date of his trial and stated that he was still in the process of trying to engage a lawyer, the court determined that he had forfeited his right to counsel and conducted the trial that day with Wilkerson representing himself.  The state court required Wilkerson to proceed *pro se* even though it had surmised that if he applied he likely would be eligible for Public Defender assistance.  The state court refused to

24

continue the trial to give Wilkerson the opportunity to do so.  Notwithstanding those facts, which to this

Court are even more concerning than that which occurred in Bettelli's case, the Court of Appeals held

that, in accordance with <u>Fischetti</u>, it could not conclude that the state court's decision to deny

Wilkerson's Sixth Amendment claim was "contrary to, or involved an unreasonable application of,

clearly established federal law, as determined by the Supreme Court of the United States."  28 U.S.C.

§ 2254(d).

 The Court of Appeals' decisions in <u>Wilkerson</u> and <u>Fischetti</u> require that this Court conclude that

Bettelli can receive no relief under § 2254(d).  Bettelli was deemed to be ineligible for Public Defender

assistance around the end of September 2004.  His trial was continued several times until March 17,

2005, thereby providing him with more than five months to hire private counsel.  He did not hire an

attorney, even though he continued to be employed and had been warned by Judge Lobaugh of the

consequences of failing to retain a lawyer.  The Supreme Court has not decided any case as of

November 5, 2008 (or indeed as of this date) that would change the analysis the Court of Appeals

applied in <u>Fischetti</u> and <u>Wilkerson</u>.[9]  Therefore, this Court cannot conclude that the state court's decision

here was "contrary to" or an "unreasonable application of" clearly established federal law as determined

by the Supreme Court under § 2254(d).

 Based upon all of the foregoing, Bettelli's contention that he was denied his Sixth Amendment

right to counsel is denied under 28 U.S.C. § 2254.

### 3. Insufficient Evidence to Support the Jury's Verdict

---

[9] Once again, the pertinent issue is what was the clearly established Federal law as determined by the Supreme Court as of November 5, 2008 (the date the Superior Court issued its decision).  <u>Greene</u>, 132 S.Ct. at 44.

Bettelli also contends that the prosecution did not present sufficient evidence to establish that the sexual abuse in this case occurred during the time-frame specified in the criminal information – that is, between November 2002 and July 2003.  The "clearly established Federal law," 28 U.S.C. § 2254(d)(1), in which to analyze this claim is set forth in Jackson v. Virginia, 443 U.S. 307 (1979).  In a habeas corpus proceeding, where the sufficiency of the evidence is in contention:

> [T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction .... does not require a court to ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt... Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

Jackson v. Byrd, 105 F.3d 145, 147 (3d Cir. 1997), quoting Jackson, 443 U.S. at 318-19 (internal citations and quotes omitted).  See also Robertson v. Klem, 580 F.3d 159, 165 (3d Cir. 2009).

In rejecting this claim, the Superior Court applied the Pennsylvania equivalent of the Jackson v. Virginia standard.  Bettelli, No. 283 WDA 2008, slip op. at 14-16.  See also Evans v. Court of Common Pleas, Delaware Cnty., 959 F.2d 1227, 1233 (3d Cir. 1992) (the test for insufficiency of the evidence is the same under both Pennsylvania and federal law).  It then explained:

> "Although the Commonwealth is required to establish the date of alleged offenses with reasonable certainty, young children are not required to testify regarding the dates of the sexual assaults they have endured." Commonwealth v. Vidmosko, 574 A.2d 96, 98 (Pa.Super. 1990).  Here, the Commonwealth presented sufficient evidence at trial to establish that [Bettelli] sexually abused the victim during the period of time asserted in the criminal information.
>
> At trial, the victim stated that she was born on May 7, 1994, and, according to her testimony, at the time of trial in March of 2005, she was "[t]en and a half" years old and in the fifth grade.  N.T. Trial, 3/17/05, at 25-26.  She stated that [Bettelli] moved out of the residence, where she was living with her mother, "probably" when she was in the fourth grade, but definitely before she was in fifth grade.  Id. at 31.  The victim described in detail how [Bettelli] sexually abused her during the time he lived with the victim and her mother, while her mother was at work and [Bettelli] was watching her.  Id. at 31-41.

Dr. Mary Carrasco, a pediatrician and expert in child abuse, testified that she examined the victim on December 19, 2003, when the victim was nine years and seven months old. Id. at 59, 62-63.  Pursuant to her medical examination of the victim, she concluded that there were physical findings (especially with regard to the appearance of the child's hymen) that were consistent with a history of repeated vaginal penetration.  Id. at 67-68.

Diane Miller testified that she lived with the victim and her mother from September or October of 2003 until the week prior to Christmas 2003.  Id. at 76.  Dina Collins, the victim's mother, testified that [Bettelli] moved out in 2003, six to eight months prior to Diane Miller moving in, id. at 88, 106, which would be anywhere from January to April of 2003.

Phyllis Alden, an employee of Venango County Children and Youth Services, testified that, when she interviewed [Bettelli], he gave conflicting statements with regard to the time period in which he resided with the victim and her mother.  Id. at 124.  First he stated that he moved out of the residence in November of 2002, but returned there numerous times, and, later, he stated he moved out in July or August of 2003.  Id. at 124-125, 127-29.

Finally, and perhaps most compelling, is [Bettelli's] own testimony that he lived with the victim and her mother from January of 2001 through September of 2003, id. at 149, which would encompass the time period set forth in the criminal information.  However, soon thereafter, [Bettelli] claimed that he moved out in September of 2002, and denied living in the house past November of 2002.  Id. at 150-51, 158.  Nevertheless, one of [Bettelli's] former employers testified that, for payroll purposes in February of 2003 and May of 2003, [Bettelli] used the address of 719 West Front Street, id. at 168, which was the residence of the victim and her mother.

Despite some of the discrepancies in testimony with regard to when [Bettelli] resided with the victim and her mother, there was ample evidence, that the jury was free to believe, to support the time-frame denoted in the criminal information, and there was ample evidence that [Bettelli] sexually abused the victim on numerous occasions during that time-frame.

Bettelli, No. 283 WDA 2008, slip op. at 14-16

There is no basis for this Court to disturb the Superior Court's adjudication under AEDPA's

deferential standard of review.  28 U.S.C. § 2254(d).  The jury's verdicts were supported by the

constitutional minimum of evidence necessary and the Superior Court's decision, which utilized the

correct governing legal principle, was not "contrary to" nor an "unreasonable determination clearly

established Federal law, as determined by the Supreme Court of the United States," nor was it an "unreasonable determination of the facts."  28 U.S.C. § 2254(d).

Based upon all of the foregoing, this claim is denied.


**C.**      **Certificate of Appealability**

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition.  28 U.S.C. § 2253 provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."  Where the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  Applying that standard here, jurists of reason would not find it debatable whether each of Bettelli's claims should be denied.  Accordingly, a certificate of appealability is denied.



**II.**

For the reasons set forth above, the amended petition for a writ of habeas corpus is denied and a certificate of appealability is denied.  An appropriate Order follows.



                                                    /s/ Susan Paradise Baxter
Dated:  March 19, 2012                              SUSAN PARADISE BAXTER
                                                    United States Magistrate Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROBERT ALLEN BETTELLI,** | ) | |
| **Petitioner,** | ) | **Civil Action No. 10-5 Erie** |
| | ) | |
| **v.** | ) | |
| | ) | **Magistrate Judge Susan Paradise Baxter** |
| **PAUL K. SMEAL, et al.,** | ) | |
| **Respondents.** | ) | |

## **ORDER**

AND NOW**,** this 19th day of March, 2012;

IT IS HEREBY ORDERED that the amended petition for a writ of habeas corpus is DENIED and a certificate of appealability is DENIED.  The Clerk of Courts is directed to close this case.

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge